ANDRÉ BIROTTE JR.
United States Attorney
ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division
PETER A. HERNANDEZ (Cal. Bar No. 178104)
Assistant United States Attorney
Deputy Chief, Violent & Organized Crime Section
     1500 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-6681
     Facsimile: (213) 894-3713
     Email: peter.hernandez@usdoj.gov

Attorneys for Plaintiff
United States of America

FILED
CLERK, U.S. DISTRICT COURT
MAY 23 2011
CENTRAL DISTRICT OF CALIFORNIA
BY            DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br> Plaintiff, <br> v. <br> GALEB MIZYED, <br> Defendant. | No. CV 10-6115-R <br> (No. CR 03-398-R) <br> [~~PROPOSED~~] ORDER AND FINDINGS OF FACT DENYING DEFENDANT GALEB MIZYED'S MOTION UNDER 28 U.S.C. § 2255 |

Having reviewed the reporter's trial transcripts in United States v. Mieko Choniece Jackson, CR 03-398(A)-RMT, dated July 20-21, 26, 2006, the hearing transcript in United States v. Galeb Mizyed, CR 03-398(A)-RMT, dated February 5, 2007, the testimony at the hearing on the instant motion on April 26, 2011, and the case file, the Court FINDS THE FOLLOWING:

1. On April 29, 2003, a federal grand jury charged defendant in three counts of a five-count indictment with conspiring (1) to distribute pseudoephedrine, a list I chemical, knowing or

-1-

| | |
|---|---|
| 1 | pseudoephedrine to individuals who would use the |
| 2 | pseudoephedrine to manufacture methamphetamine. (Id. ¶¶ 36, |
| 3 | 62, 75-77.) |
| 4 | 5. Over the course of the investigation, defendant conspired to |
| 5 | distribute over three tons of pseudoephedrine. (Id. ¶¶ 77, |
| 6 | 90.) |
| 7 | 6. On January 14, 2005, defendant proffered information to the |
| 8 | government. Prior to the meeting, defendant was advised to |
| 9 | provide information concerning the events that took place |
| 10 | during the course of the charged conspiracy. Defendant was |
| 11 | made aware that he was supposed to be truthful concerning |
| 12 | his involvement and that of his coconspirators. Despite |
| 13 | this knowledge, defendant failed to discuss co-defendant |
| 14 | Mieko Jackson's involvement in the conspiracy. |
| 15 | 7. On April 19, 2005, defendant pled guilty to count one of the |
| 16 | FSI, pursuant to a plea agreement. (CR 718.) |
| 17 | 8. During the trial of co-defendant Jackson, defendant, her |
| 18 | former boyfriend, testified on her behalf. Defendant denied |
| 19 | telling Jackson and other women he was involved with that he |
| 20 | was dealing pseudoephedrine. (RT 7/26/06: 88.) Defendant |
| 21 | admitted giving Jackson money, but he testified he never |
| 22 | told Jackson that the money he gave her was from drug |
| 23 | dealing. (RT 7/26/06: 89.) Defendant instructed Jackson to |
| 24 | buy money orders with cash he had left with her in Los |
| 25 | Angeles so that Jackson could send the money orders to |
| 26 | defendant in Chicago. (RT 7/26/06: 90-91.) Additionally, |

defendant testified that during a visit to Las Vegas in May 2002, Jackson did not transport boxes of pseudoephedrine to Los Angeles, California, and did not drive to a second location the next day to deliver pseudoephedrine to one of defendant's customers. (RT 7/26/06: 104.)

9. Co-defendant David Wallace testified that in May 2002, Jackson drove a rental car containing boxes of pseudoephedrine from Las Vegas, Nevada to Carson, California. (RT 7/20/06: 74-75.) The next day, Jackson drove the vehicle containing pseudoephedrine to a second location in order to have defendant's customer take delivery of the pseudoephedrine. (RT 7/20/06: 76-77.) Moreover, Wallace testified that during another delivery of pseudoephedrine to defendant's house in Fontana, California, Jackson assisted in unloading boxes of pseudoephedrine from a U-Haul truck to the garage. (RT 7/20/06: 86-88.)

10. Co-defendant Miguel Sarabia testified that in July 2002, he met with defendant and Jackson in Carson, California. (RT 7/21/06: 22-23.) Sarabia discussed with defendant a pending pseudoephedrine shipment that was headed for California. (RT 7/21/06: 24.) At the time, defendant needed money to pay individuals who had invested money with defendant to purchase pseudoephedrine from Canadian sources. (RT 7/21/06: 25.) Sarabia testified that he sold pseudoephedrine and that he brought $175,000 to give to defendant so that defendant could deliver narcotics proceeds to members of his organization. (RT 7/21/06: 28.) In return, defendant was going to give Sarabia a low price on pseudoephedrine once it

|   |   |
|---|---|
| 1 | arrived in California. (RT 7/21/06: 27.) When Sarabia gave |
| 2 | defendant the money, Jackson was present as defendant |
| 3 | counted the money. (RT 7/21/06: 28.) Sarabia testified |
| 4 | that he observed defendant give some money to Jackson. (RT |
| 5 | 7/21/06: 29-30.) |
| 6 | 11. On November 14, 2006, the government filed its position |
| 7 | concerning defendant's sentencing. (CR 1101.) The |
| 8 | government requested that the district court impose a |
| 9 | sentence of 168 months, which was based on a total offense |
| 10 | level of 35 and a criminal history category of I, and a |
| 11 | review of the factors set forth in 18 U.S.C. § 3553(a). The |
| 12 | government argued that defendant had not satisfied the fifth |
| 13 | criterion of the "safety valve" as set forth in 18 U.S.C. § |
| 14 | 3553(f) and USSG § 5C1.2, because defendant had not |
| 15 | testified truthfully at co-defendant Jackson's trial. (RT |
| 16 | 2/5/07: 106.) |
| 17 | 12. On November 15, 2006, defendant filed his sentencing |
| 18 | position paper. (CR 1115.) Defendant argued that he was |
| 19 | eligible for a safety valve reduction and urged the district |
| 20 | court to impose a 51-month sentence based on a review of the |
| 21 | factors set forth in 18 U.S.C. § 3553(a) and his |
| 22 | cooperation. (Id.) |
| 23 | 13. Prior to sentencing, the Probation Officer declined to apply |
| 24 | the safety valve based on the assessment that defendant "had |
| 25 | an aggravating role in the offense. Therefore, [defendant |
| 26 | was] not eligible for the safety valve adjustment." (PSR |

Addendum ¶ 1; PSR ¶¶ 98-99.) The government agreed in the plea agreement that it would not seek an aggravating role enhancement in the offense.

14. On February 5, 2007, the district court held defendant's sentencing hearing. At the outset, the district court stated: "Mr. Mizyed attempted to distribute 7,516 pounds - that's 3,409,258 grams - of pseudoephedrine during the period of 2000 to 2003. . . . With respect to the amount of pseudoephedrine, 7,516 pounds is almost 300 times the minimum quantity required for the highest base offense level of 38." (RT 2/5/07: 41-42.) Defendant's counsel argued that defendant should be given a reduction based on the safety valve because "all you have to do was give an accounting of your conduct." (RT 2/7/07: 66.) The government argued that defendant did not deserve a reduction for the safety valve because "based on his testimony under oath on direct, the government does not believe . . . defendant . . . provided . . . truthful information." (RT 2/5/07: 106.)

15. The district court, which had presided over the trial at which defendant had testified, concluded the hearing by agreeing with the government's contention concerning defendant's truthfulness. (RT 2/7/07: 125.) The district court added that he had "listened quite carefully . . . read all the briefs written on this matter . . . and it's the court's feeling that the government was correct in not offering the safety valve." (Id.). The district court then

|     |     |
| --- | --- |
| 1   | sentenced defendant to 168 months in custody, which was at |
| 2   | the low end of the advisory guideline applicable to |
| 3   | defendant, a five-year term of supervised release, and a |
| 4   | $100 special assessment. (RT 2/7/07: 126.) |
| 5   | 16. On October 22, 2009, the Ninth Circuit affirmed Jackson's |
| 6   | money laundering conviction but reversed her drug |
| 7   | trafficking conviction. (Memorandum, No. 07-50481, filed |
| 8   | Oct. 22, 2009.) The court held that there was "no evidence |
| 9   | from which the jury could reasonably infer that she knew of |
| 10  | any connection between pseudoephedrine and methamphetamine." |
| 11  | (Id.) Further, the court held that as to the money |
| 12  | laundering conviction, defendant's guilt "[was] strong" and |
| 13  | her sufficiency claim "fail[ed] given testimony by [David] |
| 14  | Wallace, [Miguel] Sarabia, and [defendant] that she knew the |
| 15  | money received from [defendant] involved the proceeds of |
| 16  | unlawful activity, and that the money he gave her to obtain |
| 17  | money orders and pay his bills was an attempt to conceal the |
| 18  | source of the funds." (Id.) |
| 19  | 17. On April 26, 2011, defendant testified that he did not |
| 20  | mention Jackson at a meeting with the government because |
| 21  | "she was not brought up." |

BASED ON THE FINDINGS OF FACT, the Court denies defendant's motion and FINDS THE FOLLOWING CONCLUSIONS OF LAW:

Defendant has failed to establish that his counsel's representation fell below an objective standard of reasonableness. Strickland v. Washington, 466 U.S. 668, 687-88.

-4-

Defendant's first claim that his counsel failed to pursue an evidentiary hearing and failed to demand an adequate factual basis for determining whether or not defendant had been truthful is not supported by the trial testimony the Hon. Robert M. Takasugi had before him when he made the determination that defendant was not eligible for a safety valve reduction pursuant to 18 U.S.C. § 3553(f) and USSG § 5C1.2. Judge Takasugi, who had been the sitting trial judge, listened to the trial testimony of Wallace, Sarabia and defendant, and found that defendant had not provided truthful information. An evidentiary hearing would have merely reiterated the trial testimony and was of no value. (RT 2/7/07: 125.)

Defendant's claim that the Ninth Circuit's memorandum reversing co-defendant Jackson's drug conviction automatically renders his trial testimony truthful is also denied. (CV 3 at 7.) The only credibility findings before this Court were made by Judge Takasugi and remain intact.

Defendant's final claim that he is eligible for the safety valve provision because "[t]he denial of the safety valve sentence reduction under 18 U.S.C. § 3553(f) and USSG § 5C1.2 [was] based solely upon information that was not tendered 'to the government'" is also denied and not supported by the facts. (CV 7 at 5.) Despite his claim that he was not asked about Jackson at his meeting with the government on January 14, 2005, defendant had the obligation to truthfully provide information concerning

1 | Jackson's involvement in the drug and money laundering
2 | conspiracies but failed to do so.

BASED ON THE FOREGOING, DEFENDANT'S MOTION IS DENIED

DATE: **May 23, 2011**

_____
Hon. MANUEL L. REAL